IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT E. BARKER, | ) | CASE NO. 5:09 CV 1171 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J.ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Robert E. Barker's application for period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court finds that the decision of the Commissioner is REVERSED and REMANDED to the Social Security Administration for further proceedings not inconsistent with this Memorandum Opinion.

## I. INTRODUCTION and PROCEDURAL HISTORY

Plaintiff first filed applications for DIB and SSI on July 11, 2000 (Tr. 402).  These applications were denied initially and upon reconsideration, and Plaintiff timely requested an administrative hearing (Id.).  On July 19, 2002, a hearing was held before Administrative Law Judge William L. Hafer ("ALJ Hafer"), during which vocational expert ("VE") Michael Klein, Ph.D.,

testified (Id.). Plaintiff did not appear at this hearing, and he did not appeal ALJ Hafer's unfavorable determination.

Plaintiff filed new applications for DIB and SSI on December 7, 2004, alleging that he became disabled on October 26, 2002 due to manic depression and memory loss (Tr. 51-55, 356-58). These applications also were denied initially and upon reconsideration (Tr. 40-50, 350-55, 359-61). Plaintiff timely requested a hearing, and on April 22, 2008, he appeared with counsel and testified before Administrative Law Judge Joseph Shortill ("the ALJ") (Tr. 362-98). VE James Parker also appeared and testified at Plaintiff's hearing (Tr. 388-97). On May 21, 2008, the ALJ issued a written decision denying Plaintiff's claims for benefits (Tr. 14-22). The ALJ determined at Step Five of the five-step sequential evaluation[1] that Plaintiff retained the residual functional capacity

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a); 416.920(a) The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – he is not disabled.

(2) If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3) If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5) Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

("RFC") to perform a limited range of medium work existing in significant numbers in the national economy and therefore was not disabled (Tr. 18-22). Specifically, the ALJ determined that Plaintiff was able to lift twenty-five pounds frequently and fifty pounds occasionally; was able to stand, sit and walk six hours during an eight-hour workday; would never be able to climb ladders, ropes or scaffolds; would need to avoid hazards such as machinery and heights; would be limited to no more than frequent overhead reaching bilaterally; would be limited to simple, unskilled, one-to-two step, routine and repetitive tasks; and that he could tolerate no more than occasional changes in the work setting or more than occasional interaction with the general public (Tr. 19). The ALJ then determined, based on the VE's testimony, that although Plaintiff's RFC precluded him from performing his past relevant work, Plaintiff nevertheless could perform the jobs of industrial cleaner, inserter, and production helper (Tr. 21). The Appeals Council denied Plaintiff's request for review on March 24, 2009, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 5-7). On appeal, Plaintiff claims that the ALJ's decision is not supported by substantial evidence.

Plaintiff was born on August 7, 1961, which made him 41 years old on his alleged onset date, 46 years old at the time of the ALJ's determination, and at all times a "younger individual" for purposes of the Social Security regulations (Tr. 51, 373). *See* 20 C.F.R. §§ 404.1563; 416.963. Plaintiff is a high school graduate and a certified nurse's aide (Tr. 125, 373, 390-91). He has past relevant work experience as a production assembler, cook's helper, janitor, nurse assistant, hand packer, and palette maker (Tr. 390-91).

## II. DISABILITY STANDARD

A claimant is entitled to receive DIB and/or SSI only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423; 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically

determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1525; 416.905.

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. ANALYSIS

Plaintiff argues that the ALJ erred by failing to properly evaluate the medical opinion evidence provided by Dr. Karger, Dr. Ickes, the state agency physicians, and Dr. Reddy. The court addresses separately below the merits of Plaintiff's arguments with respect to each of these medical sources.

### A. Dr. Karger

On December 13, 2004, Dr. Karger conducted a one-time evaluation of Plaintiff on behalf of the county Department of Job and Family Services and completed a mental functional capacity assessment (Tr. 137-39). He found Plaintiff to be moderately, markedly and extremely impaired in various job-related functional areas (Tr. 137). He based his findings, in part, on Plaintiff's extremely anxious, tense, restless and agitated demeanor at the examination and on Plaintiff's demonstration of delayed memory on the Cognistat. Dr. Karger further found that Plaintiff's significant emotional instability would impair his ability to adapt to workplace changes and to plan realistically and independently (Tr. 138). He also found that Plaintiff's mental problems would extremely limit his ability to accept instructions and criticisms from supervisors and to work with peers without distracting them or exhibiting behavioral extremes (Tr. 137). As result, he deemed Plaintiff to be unemployable for 12 months or more and assigned him a GAF score of 43 (Tr. 139).

Plaintiff argues that the ALJ erroneously rejected Dr. Karger's opinion. Plaintiff claims that Dr. Karger's opinion deserved a "proper analysis" and greater weight because Dr. Karger examined Plaintiff in person, provided a clear and complete explanation for his findings, and because he is a specialist in psychology.

An ALJ must evaluate all the medical opinions in accordance with the regulations, regardless of their source. *Walton v. Comm'r of Soc. Sec.*, 187 F.3d 639 (Table), 1999 WL 506979 (6th Cir.

Jun. 7, 1999); 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the opinion of a one-time examining physician is not necessarily entitled to any special deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (finding that the report of a one-time examining physician was not entitled to any "special degree of deference"); *see also Austin v. Comm'r of Soc. Sec.*, at *7 (N.D. Ohio Jan. 29, 2010) (noting that "[i]t is well established that the opinions of consultative examiners are not entitled to controlling weight"). Additionally, the requirement that an ALJ give "good reasons" for rejecting the opinion of a treating physician does not apply to a one-time examining physician. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007); *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 507 (6th Cir. 2006). Ultimately, the determination of disability rests with the Commissioner, not with an examining – or, for that matter, treating – physician. *See Price v. Comm'r of Soc. Sec.*, 113 F.3d 1235 (Table), 1997 WL 210805 at *2 (6th Cir. Apr. 25, 1997) (citing *Houston v. Sec. of Health and Hum. Servs.*, 736 F.2d 365, 367 (6th Cir. 1984));

In his written determination, the ALJ summarized Dr. Karger's findings and conclusions; he then stated that he gave "no weight to Dr. Karger's opinion as subjective findings upon examination are not included in the medical record" (Tr. 19). This portion of the ALJ's written decision clearly reflects that the ALJ considered Dr. Karger's opinion, and substantial evidence supports the ALJ's decision to give Dr. Karger's opinion no weight. Dr. Karger determined that Plaintiff was unemployable based on a single examination that appears to have consisted exclusively of an interview and the administration of a neuro-behavioral cognitive status examination called the Cognistat (Tr. 138). As Defendant notes, Dr. Karger's extreme findings are inconsistent with much of the other record evidence. Furthermore, the ALJ was not required to give controlling or significant weight to any portion of Dr. Karger's opinion, and the regulations did not require him to give "good reasons" for rejecting his opinion. Based on the above, the court concludes that the

ALJ did not err with respect to Dr. Karger's opinion.

## B. Dr. Ickes

Dr. Ickes examined Plaintiff on behalf of the state Bureau of Disability Determination on May 20, 2005 (Tr. 165-67). Dr. Ickes diagnosed Plaintiff with bipolar disorder, not otherwise specified, and assigned Plaintiff a GAF score of 55 (Tr. 167). He opined based on his clinical interview with Plaintiff that Plaintiff was mildly impaired in his ability to relate to others; not significantly impaired in his ability to understand, remember, and follow instructions; mildly to moderately impaired in his ability to maintain concentration, persistence and pace to perform simple, repetitive tasks; and moderately impaired in his ability to withstand the stress and pressures of work (Id.).

Plaintiff argues that the ALJ erred by failing to include in his RFC finding two of the limitations that Dr. Ickes ascribed to Plaintiff – namely, that Plaintiff is mildly to moderately impaired in his ability to perform simple, repetitive tasks and that he is moderately impaired in his ability to handle the stress and pressures of work. Plaintiff also argues that the ALJ erred because he did not offer any analysis of Dr. Ickes' opinion or explain the weight he gave to it.

Plaintiff's argument is not well-taken for a couple of reasons. First, the extent to which Dr. Ickes' opinion actually is inconsistent with the ALJ's RFC finding is not entirely apparent. As Defendant notes, Dr. Ickes did not opine that Plaintiff could not perform simple, repetitive tasks; rather, Dr. Ickes opined that Plaintiff's "mental ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks would likely be mildly to moderately impaired" (Tr. 167). A mild to moderate impairment in performing a particular type of task logically is not equivalent to a complete inability to perform that task. Furthermore, the ALJ's RFC determination indicates that Plaintiff is limited to "simple, unskilled, one-two, routine and repetitive

tasks" (Tr. 18). As Defendant notes, this RFC finding arguably is more restrictive than a limitation merely for simple, repetitive tasks. The court also notes that Dr. Ickes' opinion is not particularly definitive as to whether Plaintiff would even exhibit this limitation, since Dr. Ickes stated that Plaintiff "likely" would be mildly to moderately impaired in his ability to perform simple, repetitive tasks. In any case, the limitation for simple, unskilled, one- and two-step, routine and repetitive tasks does not appear to be inconsistent with this portion of Dr. Ickes' opinion. As for the portion of Dr. Ickes' opinion indicating that Plaintiff would be moderately impaired in his ability to withstand the stress and pressures of day-to-day work activity, Plaintiff does not persuasively show how this alleged limitation is inconsistent with the ALJ's RFC determination.

Second, to the extent that the ALJ did reject any part of Dr. Ickes' opinion, he did not err in doing so. Because Dr. Ickes was a one-time examining physician, for the reasons stated above, the ALJ was not required to give controlling or significant weight to Dr. Ickes' opinion or to give "good reasons" for rejecting any portion of that opinion. Furthermore, the record reflects that the ALJ considered Dr. Ickes' opinion. Based on the above, the court concludes that the ALJ did not err with respect to Dr. Ickes' opinion.

### C. State Agency Physicians

On June 14, 2005, state agency psychologist Kaen Steiger, Ph.D. completed a psychiatric review technique form ("PRTF") (Tr. 168). Dr. Steiger indicated that Plaintiff had mild restrictions in his daily living activities; moderate restrictions in his social functioning; moderate difficulties in maintaining concentration, persistence and pace; and that he had had no episodes of decompensation (Tr. 170). Dr. Steiger then completed a mental RFC assessment, in which she adopted the RFC assessment made by ALJ Hafer, the ALJ in Plaintiff's previous action for benefits (Tr. 173). ALJ Hafer found that Plaintiff was limited to no contact with the general public and only superficial

contact with supervisors and co-workers; however, the ALJ in this case found that Plaintiff was limited only to occasional interaction with the general public with no limitation for interactions with supervisors and co-workers (Tr. 399, 405). On October 3, 2005, state agency psychologist Nancy McCarthy, Ph.D. reviewed the medical evidence and affirmed Dr. Steiger's findings (Tr. 173).

Plaintiff's argument with regard to the state agency physicians' opinions is two-fold. First, Plaintiff argues that the ALJ erred by considering PTRF completed by Dr. Steiger and affirmed by Dr. McCarthy. According to Plaintiff, the PTRF cannot either inform or support the ALJ's RFC finding because it is a tool designed to be used exclusively at Step 3 of the sequential evaluation. Second, Plaintiff claims that the ALJ's RFC finding is at odds with the opinions of the state agency physicians, who adopted ALJ Hafer's RFC determination.

Plaintiff's first argument is misplaced. Although Plaintiff is correct that the PTRF is designed primarily for the third step of the sequential evaluation, an ALJ has a duty to consider all the evidence of record in determining a claimant's RFC. Thus, the ALJ did not err by considering the state agency physicians' findings regarding Plaintiff's "B" criteria in determining Plaintiff's RFC.

However, the court finds merit to Plaintiff's second argument – i.e., that the ALJ erroneously failed to include in the RFC the prior ALJ's findings, as adopted by the state agency physicians, that Plaintiff have no interaction with the public and only superficial interaction with co-workers and supervisors. Generally speaking, an ALJ must consider in accordance with the regulations the opinion evidence provided by non-examining state agency physicians. 20 C.F.R. §§ 404.1527(f), 416.927(f). Unless the claimant's treating physician is given controlling weight, the ALJ also must explain in the written decision the weight given to the opinions of the state agency physicians; however, the ALJ is not bound by those opinions. *Id.*

Yet, an ALJ *is* bound under principles of res judicata by the findings of a previous ALJ, absent evidence of an improvement in the plaintiff's condition. *Drummond v. Comm'r of Soc. Sec., 126 F.3d 837, 839 (6th Cir. 1997)*. In this case, as Plaintiff notes, the ALJ Hafer found that Plaintiff should not do any work involving interaction with the general public and only superficial interaction with supervisors and co-workers. Citing Acquiescence Ruling 98-4 – wherein the Social Security Agency adopted the holding in *Drummond* – the state agency physicians indicated in their report that they adopted the previous ALJ's determination (Tr. 173). The ALJ in the present action for benefits explained that he gave "weight" to the opinions of the state agency physicians. He did not mention whether and to what extent he gave deference to the prior ALJ's findings, although the ALJ's RFC finding makes clear that he did not give ALJ Hafer's findings complete deference. Rather, the ALJ limited Plaintiff to no more than *occasional* interaction with the public (as opposed to no interaction with the public, as in ALJ Hafer's assessment), and he made no mention of whether and to what extent Plaintiff can interact with co-workers and supervisors (whereas ALJ Hafer found that Plaintiff was limited to superficial contact with such individuals).

Defendant essentially argues that any error with respect to this issue is harmless because the VE testified that the three jobs he identified – i.e., industrial cleaner, production helper, and inserter – required no interaction with the public. Defendant does not argue that Plaintiff's abilities to interact with others have improved or that this portion of the prior RFC finding is for some reason inaccurate. Under *Varley v. Secretary of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987)*, the testimony of a vocational expert in response to a hypothetical question may serve as substantial evidence of a claimant's vocational qualifications to perform certain jobs, but only if the hypothetical accurately portrays the claimant's condition. *See also Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002)*. Should the hypothetical fail to accurately describe a claimant's

physical and mental impairments, the defect is fatal to both the vocational expert's testimony and the ALJ's reliance upon that testimony.  *See id.*

Defendant's characterization of the hearing testimony is not rigorously accurate, and his argument does not address the whole of the issue.  The following exchange took place at the hearing:

> Q: Hypothetical two contains all of the restrictions or hypothetical, of hypothetical number one with the addition of, of a social functioning defect based on his testimony of only occasional interaction with the public.  Would that change your answer any?
>
> A: Your honor, the not with the, the public would not be an issue because production helper, industrial cleaning, you're working (INAUDIBLE) environment, and an inserter does their work before the newspapers are delivered so the public is not an issue.

(Tr. 395).

Although the VE testified that "the public would not be an issue" in any of the three identified jobs, it is not entirely clear, based on the ALJ's question about "occasional" interaction, whether the VE's testimony is meant to encompass all potential interaction with the public or only occasional interaction.  Thus, it is unclear whether the VE's answer might have been different if the ALJ had included a limitation for "no" – rather than "occasional" – public interaction.  More troubling, perhaps, is the fact that the above testimony does not include any limitation for only superficial interaction with co-workers and supervisors, as included in the prior ALJ's RFC finding.  Thus, even if the VE's testimony that "the public would not be an issue" might be viewed as relating to all interaction with the public, it still is unclear whether a person who can tolerate only superficial interaction with supervisors and co-workers can perform the three identified jobs because there is no testimony regarding that issue.  As explained above, the ALJ was bound, under *Drummond*, to accept the factual findings of the prior ALJ, absent changed circumstances requiring review.  Defendant does not argue that Plaintiff's abilities to interact with others in the work setting have

improved; only that the VE's responses would have applied equally to a person with Plaintiff's limitations, thereby demonstrating that remand is inappropriate. However, the hypothetical upon which the ALJ relied in formulating Plaintiff's RFC – and, by extension, in determining that Plaintiff was not disabled – did not include certain factual findings that we now must accept as accurate and that might have changed the VE's testimony. Because, based on the above, it is unclear whether a person with all of Plaintiff's limitations can perform the jobs identified by the VE, the court finds that substantial evidence does not support the ALJ's Step Five finding.[2]

### D. Dr. Reddy

Plaintiff also argues that the ALJ's treatment of Dr. Reddy, Plaintiff's treating physician, was in error. Specifically, Plaintiff claims that ALJ's statement in the written decision that "[e]ven his own treating source has declined to declare him totally disabled" is not supported by the record, and that the ALJ may have relied improperly on this erroneous finding in making the RFC determination. Plaintiff claims that the record clearly shows Dr. Reddy wrote a letter in June 2006 stating that he was disabled and could not work to pay child support.

Plaintiff's arguments regarding Dr. Reddy are without merit. As Defendant states, the record shows that Plaintiff asked Dr. Reddy for a disability letter in June 2006 and in September 2006; however, there is no evidence in the record to indicate that Dr. Reddy actually wrote him a letter. Although it is possible – as Plaintiff's suggests – that Dr. Reddy wrote a letter "vouching" for

---

[2]The court also notes that it is the Commissioner's burden at this stage of the analysis to show that Plaintiff is not disabled. Although the prior ALJ decided the case at Step Four based on his assessment that Plaintiff could perform his past relevant work, in this case, the ALJ determined that Plaintiff's RFC rendered him unable to perform his past relevant work. The ALJ then proceeded to Step Five to determine whether Plaintiff could perform other work existing in the national economy. At Step Five, the burden shifts to the Commissioner to show that there exists other work in the ecomomy that the claimant can perform.

Plaintiff's disability, it also is possible – as the ALJ appears to have concluded – that Plaintiff asked Dr. Reddy for such a letter, and Dr. Reddy decided not to write one.  That no letter regarding Plaintiff's disability appears in the record may support the latter possibility.  *See Wines v. Comm'r of Soc. Sec.*, 268 F.Supp.2d 954, 960 (finding that when the record contains evidence supporting two contrary conclusions, a reviewing court must accept the finding of the Commissioner).  Also notable is the fact that Plaintiff apparently felt compelled to ask Dr. Reddy for a letter a second time in September 2006.  *See* tr. 265 (noting Plaintiff's statement that "[h]e wants a letter stating that he cannot pay the child support").  This fact tends to undermine Plaintiff's argument that Dr. Reddy wrote a letter, and especially, that he wrote one in June 2006.

Moreover, it ultimately is immaterial whether or not Dr. Reddy in fact wrote a letter because there is no such letter in the record.  Despite Plaintiff's urgings to the contrary, the ALJ was under no obligation to assume that because Plaintiff asked Dr. Reddy for a disability letter on two occasions, that Dr. Reddy automatically would have "served the understood purpose of such a request" by writing a letter that "vouch[ed] for Plaintiff's ongoing medical disability." *See* doc. 17, at 3.  Indeed, even if Dr. Reddy did write a letter a concerning Plaintiff's work abilities, because the letter is not in the record, the court has no way of knowing what Dr. Reddy's opinions were regarding Plaintiff's impairments and limitations, or how well-supported those opinions were, or anything else about what that letter might have stated.  And even if, as Plaintiff suggests, Dr. Reddy had declared Plaintiff to be totally disabled in the alleged letter, the ALJ likely would not have been bound by such a statement.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1527(e)(1)-(3) (providing that because a claimant's employability – *i.e.*, whether he is disabled – is an issue ultimately reserved to the Commissioner, a physician's opinion on this topic is not entitled to any special significance).  In short, Plaintiff's arguments with

respect to this issue are wholly unpersuasive. Plaintiff does not make any other argument regarding the ALJ's analysis of Dr. Reddy or his treatment notes. Thus, the court concludes that the ALJ did not err in his treatment of Dr. Reddy or his findings.

### V. CONCLUSION

For the foregoing reasons, the court finds that the decision of the Commissioner that Plaintiff is not disabled is not supported by substantial evidence. Accordingly, the court REVERSES the ALJ's decision and REMANDS this case to the Social Security Administration for proceedings not inconsistent with this Memorandum Opinion.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: July 7, 2010.